IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THOMAS LEE BRINCEFIELD, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | 1:20CV767 <br> 1:17CR25-1 |

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner in this action brings a Motion [Doc. #52] and Amended Motion [Doc. #53] to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He pled guilty in this Court to one count of distributing heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). He received concurrent sentences of 121 months for the heroin charge and 120 months for the firearm charge. Respondent filed a Response [Doc. #59] to Petitioner's Motion, and Petitioner filed a Reply [Doc. #63]. The case is now before the Court on Petitioner's Motion and Amended Motion.

Respondent first requests dismissal on the ground that Petitioner's Motion was filed outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"). 28 U.S.C. § 2255(f). In considering this contention, the Court notes that the one-year limitation period begins to run from the latest of several potential starting dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Under § 2255(f)(1), the limitation period runs from the date when the judgment of conviction became final. Where a petitioner files an appeal, finality has been construed to mean when the petitioner may no longer seek further review because of (1) the denial of a petition for certiorari to the United States Supreme Court or (2) the expiration of the time for seeking such review. Clay v. United States, 537 U.S. 522 (2003). Here, Petitioner filed a direct appeal challenging his sentence, but the United States Court of Appeals affirmed the sentence and entered judgment on May 28, 2019. Petitioner did not seek certiorari, which means that his judgment of conviction became final 90 days later on August 26, 2019, when his time for seeking review by the Supreme Court expired. See Clay, 537 U.S. at 524-25 (holding that "we reject the issuance of the appellate court mandate as the triggering date . . . [and] [f]or the purpose of starting the clock on § 2255's one-year limitation period, we hold, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Petitioner's Motion is signed as having been executed on August 18, 2020, and it was received by the Court on August 24, 2020, which is within the one-year time limit for filing. Therefore, the Motion is timely.

2

Respondent also argues that Petitioner's Motion is without merit. In the Motion and Amended Motion, Petitioner raises one clear claim for relief, which is that trial counsel provided ineffective assistance of counsel by failing to properly handle several matters at sentencing. He may also raise a second claim that appellate counsel provided ineffective assistance by failing to challenge the alleged ineffectiveness of trial counsel on direct appeal. Finally, although not mentioned in his original filings, Petitioner's Reply raises a claim challenging his firearm conviction under Rehaif v. United States, ___ U.S. ___, 139 S. Ct. 2191 (2019).

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). With respect to the performance prong of Strickland, a petitioner bears the burden of affirmatively showing deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). In considering such a contention, the Court reviews counsel's conduct with a "deferential eye" and "presume[s] that challenged acts are likely the result of a sound trial strategy." Id. With respect to the prejudice prong of Strickland, to show prejudice the petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal quotation omitted). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations.

3

As for ineffective assistance on appeal, such claims are judged using the Strickland test set out previously. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745 (1983); see also Smith v. Murray, 477 U.S. 527 (1986); Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. Jones, 463 U.S. at 751-52. Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)); see also Lawrence, 517 F.3d at 709 ("Appellate counsel was only ineffective if his failure to [raise an issue] . . . fell below an objective standard of reasonableness and, but for that failure, [the petitioner] would have prevailed in his appeal.")

Here, Petitioner enumerates five possible instances of ineffective assistance of counsel by his trial attorney. The first states that: "The attorney appointed to represent Movant in the matter of Government's breach of the plea agreement as Movant reserved the right to object to the drug weights." (Motion at 4.) This claim is difficult to understand and, in any event, does not state any claim for relief as it identifies no potential breach of the plea agreement by the Government and no basis for objecting to any drug weight used at sentencing beyond, perhaps, a mertiless argument discussed below in connection with Petitioner's third and fourth allegations of ineffective assistance. Similarly, Petitioner's second argument states that counsel

4

was ineffective "by failing to ensure the Government upheld their end of the plea agreement." (Id.) Petitioner fails to even identify how the Government did not satisfy its obligations under the plea agreement. These claims are entirely conclusory and should be denied.

Petitioner's third argument alleging ineffective assistance is that counsel did not require the Government to prove that he trafficked in cocaine for sentencing purposes where there was no audio or video proof that he did so. (Id.) This last assertion is simply incorrect. Upon his arrest Petitioner spoke to law enforcement and gave a statement that was recorded with both audio and video. In that statement, he admitted to selling quantities of both heroin and cocaine. (Sentencing Tr., Vol. I., at 27-28.) He described the quantities he sold in great detail. (Id. at 30-41.) Petitioner's fourth argument seeks to avoid this fact by faulting his attorney for failing to object to the use of his statement on the ground that it was uncorroborated and that, based on United States v. Adams, 583 F.3d 457, 469 (6th Cir. 2009), and United States v. Henderson, 307 F. App'x 970, 979 (6th Cir. 2009), a person cannot be convicted based only on their uncorroborated extrajudicial confession. (Motion at 5.) See also United States v. Rodriguez-Soriano, 931 F.3d 281, 287-88 (4th Cir. 2019). However, Petitioner was not convicted based on his confession. He was convicted based on his guilty plea. The amounts to which he confessed were used only at sentencing. Petitioner cites no authority that would have required counsel to argue for an extension of the rule regarding convictions set out in cases such as Adams, Henderson, and Rodriguez-Soriano to sentencing and the calculation of drug weights. Moreover, there was extensive additional evidence regarding Petitioner's sales of heroin, including multiple controlled purchases of 7-gram quantities of heroin from Petitioner, as well as individually-wrapped heroin and drug distribution paraphernalia

5

recovered from Petitioner's residence, and information from other law enforcement investigations, as detailed during the testimony at the Sentencing Hearing, providing sufficient indicia of reliability. See, e.g., U.S. v. Cummings, 337 F. App'x 313 (4th Cir. July 22, 2009) (upholding calculation of drug weight based on post-arrest statements with sufficient indicia of reliability); United Sates v. Hill, 2023 WL 2674866 (4th Cir. March 29, 2023).[1] Therefore, counsel's failure to challenge the consideration and use of Petitioner's statements was not unreasonable and did not prejudice Petitioner. Indeed, counsel's choice to instead highlight Defendant's cooperation in those statements was effective and resulted in a variance below the Guideline range. Thus, his third and fourth assertions of ineffective assistance also fail.

Finally, Petitioner contends that counsel provided ineffective assistance when he "failed to challenge the charge of a firearm in relation to a drug offense" because he did not force the Government to prove active employment of a firearm by Petitioner. (Motion at 5.) Again, Petitioner appears to be conflating sentencing issues with requirements for a conviction. Petitioner was not convicted of using a firearm during a drug trafficking offense. He was convicted only of possessing a firearm after having a felony conviction. No active employment was involved or needed for that conviction.

Petitioner did receive a sentencing enhancement under USSG § 2D1.1(b)(1) for possessing the firearm in relation to his drug offense, but this Guideline enhancement also does not require active employment of the firearm. Instead, the enhancement applies if the

---

[1] To the extent Petitioner specifically challenges the use of his statements regarding distribution of cocaine, the Court also notes that Petitioner's Guideline calculation was driven by the quantity of heroin (between 1 and 3 kilograms) under § 2D1.1(c)(5), and that Guideline would not change even if all of the cocaine amounts were excluded.

6

firearm is present, "unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." USSG § 2D1.1 comment. n.11(A). A firearm is connected to the offense if "the firearm has 'some purpose or effect with respect to the drug trafficking crime[.] . . . [T]he gun at least must "facilitate or have the potential of facilitating," the drug trafficking offense.'" United States v. Lipford, 203 F.3d 259, 266 (4th Cir. 2000) (quoting Smith v. United States, 508 U.S. 223, 237 (1993)). The presence of the firearm cannot be accidental or coincidental, but it is enough if the firearm is present and its presence might embolden or protect the defendant during the crime. Id. Factors to be considered include the type of firearm involved, the proximity of the firearm to the drug activity, and the type and extent of drug activities being conducted where the weapon is found. United States v. Manigan, 592 F. 3d 621, 629-30 (4th Cir. 2010). Here, Petitioner freely admitted to law enforcement that he possessed the handgun in the home where he dealt drugs and that he did so to protect himself and his family from being robbed or burglarized. (Sentencing Tr., Vol. I. at 28-29.) He also made a statement that he had been recently robbed of a half a kilogram of heroin. (Id. at 29.) There was more than sufficient evidence to sustain the enhancement and Petitioner does not explain how counsel could have handled the issue differently. Counsel did not perform deficiently or prejudice Petitioner by failing to challenge the enhancement on the basis that he did not actively employ the firearm. All of Petitioner's arguments concerning ineffective assistance by trial counsel fail and should be denied. Likewise, because none of these claims have merit, counsel on appeal could not have

7

performed deficiently or prejudiced Petitioner by failing to raise them. Any claim of ineffective assistance of counsel on appeal should also be denied.

Finally, as stated earlier, Petitioner raises a potential claim under Rehaif in his Reply. He did not, as he should have, move to amend his Motion. Nevertheless, there is no reason to require such a motion because the claim fails on its face. Under § 922(g)(1), any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" is prohibited from possessing a firearm. Based on Rehaif, "the Government must prove both that the Defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Rehaif, 139 S. Ct. at 2200. Petitioner here argues that he "was unaware that as a convicted felon [he] could not possess a weapon for his family's protection." However, Rehaif does not require that he knew his possession was illegal, only that he knew he was a convicted felon in that he had a prior conviction for a crime punishable by more than a year of imprisonment.

The United States Supreme Court later decided Greer v. United States, ___ U.S. ___, 141 S. Ct. 2090 (2021), which involved two cases with similar claims under Rehaif that were raised for the first time on direct appeal and subject to plain error analyses. To obtain relief in a plain error review, an appellant must show that an error occurred, that the error was plain, and that the error affected "substantial rights," which generally means that there must be "'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" Greer, 141 S. Ct. at 2096 (quoting Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904-05 (2018)). The Supreme Court noted in performing this analysis that "demonstrating prejudice under Rehaif 'will be difficult for most convicted felons for one

8

simple reason: Convicted felons typically know they're convicted felons.'" Id. at 2098 (quoting United States v. Lavalais, 960 F.3d 180, 184 (2020)). The Court therefore concluded that "a Rehaif error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon." Id. at 2100. ("A Rehaif error in jury instructions is therefore not structural. And it follows that a Rehaif error in a plea colloquy is likewise not structural. The omission of that mens rea element from a plea colloquy—like the omission of that mens rea element from jury instructions—does not affect the entire framework within which the proceeding occurs."). Under Greer, a petitioner must show prejudice from any alleged error.

Further, the burden for a petitioner proceeding under § 2255 is even higher than for a defendant attempting to show plain error on direct appeal. See United States v. Frady, 456 U.S. 152, 166 (1982) (rejecting "use of the 'plain error' standard to review § 2255 motion" and stating "that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal"). Therefore, in light of the standard set out above in Greer, at a minimum to establish prejudice, Petitioner would have to make a sufficient argument or representation that he did not know he was convicted of a crime punishable by more than a year of imprisonment. At the time Petitioner possessed the firearm, he was on supervised release for a prior conviction in this court in case 1:03CR346-1 for which he received and served a sentence of 130 months of imprisonment. He cannot somehow argue that he did

9

not know that he was previously convicted of a crime punishable by more than a year in prison.[2] This claim should also be denied.

IT IS THEREFORE RECOMMENDED that Petitioner's Motion [Doc. #52] and Amended Motion [Doc. #53] to vacate, set aside or correct sentence be denied, that judgment be entered dismissing the action, and that, there being no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability not issue.

This, the 8th day of June, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[2] Indeed, the evidence outlined in the Presentence Report reflects that in his recorded post-arrest statements, Petitioner confirmed his possession of the gun and stated that he knew he should not have the gun. Similarly, at the Sentencing Hearing, Petitioner stated that he was guilty of having the firearm and that he "knew better."

10